Gboveb, J".
(dissenting). Chapter 715, volume 2, page 1581,, Laws of 1871, among other appropriations, has the following:
“To Mrs. Lewis Washington, of Halltown, West Virginia,, the sum of $20,000 or so much thereof as may be necessary for the purchase of certain relics of General George Washington,, offered by her to the State, to be paid only upon the certificate of Martin Grover and the chancellor of the university and J. Carson Brevoort that said relics are in their opinion genuine, and that it is desirable in their judgment that they should be placed’in the museum of the State library.” The office of chancellor of the university is one created by law, and the incumbent of that office is as distinctly designated by the title of his office as one of the three persons whose certificate was required, as if his name had been inserted. In the absence of any other statute or rule of law affecting the question, it is entirely clear that the comptroller could not proceed to negotiate with Mrs. Washington for the purchase of the relics under the statute until each of the three persons designated had signed a certificate in accordance with its provisions, and such certificate had been presented to him. This position is not seriously questioned by the counsel for the appellant. No such certificate ever was made or presented to the comptroller. A certificate was made by the chancellor of the university and J. Carson Brevoort, to the effect that “ on the 19th of June, 1871, Martin Grover, the chancellor of the university (John V. L. Pruyn) and J. Carson Brevoort, named in said act, met at the State library in Albany, for the *487 purpose and in discharge of the duty thereby confided to them, and inspected and examined the relics of Gen. George Washington, referred to in the said act of the. legislature, a list of which was thereto appended, with a statement of certain evidence in regard to said relics; and thereupon the said Martin Grover refused to sign or unite in any certificate such as is called for by the said act of the legislature. The other parties named, to wit, the chancellor of the university (John V. L. Pruyn) and the said J. Carson Brevoort, do, therefore, without the concurrence of their associate, hereby certify that the said relics of Gen. George Washington, referred to in the said act of the legislature, are in their opinion genuine, and that it is desirable, in their judgment, that they should be placed in the museum of the library.” It is claimed by the counsel for the appellant that this certificate brings the case within the provisions of section 27, 2 B. S., 15o. That section provides that whenever any power, authority or duty is confided by law to three or more persons,, and whenever three or more persons or officers are authorized or required by law to perform any act, such act may be done "and such power, authority or duty may be exercised and performed by a majority of such persons or officers upon a meeting of all the persons or officers so intrusted or empowered, unless special provision is otherwise made. This section plainly implies that the acts, within its provisions to be done by the persons so authorized, are to be done by them as a board; that such persons are to meet, discuss and deliberate in regard thereto as a board constituted bylaw for that purpose, and, having so met and deliberated, the action of the majority is valid.
The position of the counsel is that the genuineness of the relics and the desirableness of their purchase were to be so determined. To this position there is, I think, two conclusive answers. First, the members of the legislature as well as the courts must take notice of who is' governor, State officers and judges of the Supreme Court and Court of Appeals. This is elementary. Martin Grover was, at the time of the passage of the act and at the time *488 of the making of the certificate, an acting associate judge of the Court of Appeals. Section 10 of article 6 of the Constitution of the State provides that the judges of the Court of Appeals and the justices of the Supreme Court shall not hold any other office or public trust. All votes for any of them, for any other than a judicial office given by the legislature or the, people, shall be void. If the designated individuals were to constitute a board to determiné the questions on behalf of the public, it did not make them judicial officers, but did confer upon them a trust in behalf of the public. ' If this be so, and I see no answer to. it, the act was unconstitutional and void, so far as his designation was concerned. Yoid in this, the whole of this provision is void. It plaiiily was not the intention to confer the trust upon two, and the whole argument to show that it is within the provisions of section 27 assumes that if any one of the three refused to act, or if from any cause failed to attend the meeting, any action of the- two would be nugatory. But the act did not create-' a board. Ho provision is made for any meeting of the pérsons designated or for giving notice of any such meeting. Ho power is given to any one to call it. Ho duty of attending it is enjoined. In short, no such thing was thought of by the legislature or any one else, until it was ascertained that, the treasury of the State could in no other way be depleted of $20,000 for private use, and then the experiment was resorted to. I say for private use, without hazarding any severe criticism from those who have seen the relics. • The obvious' construction of the statute is that the comptroller might negotiate for- the purchase at a price not exceeding $20,000, subject to the condition that Mrs. Washington should first procure,- not the determination of two of the persons designated while the three were acting as a board, but the certificate of three persons as individuals, 'stating the requisite facts. Had she obtained such certificate from each upon separate pieces of paper, no two of them ever having met or seen each other, -, it would have been a performance of the condition by her. If right in this, it is clear that section 27 R. S. (supra) has *489 nothing to do with the question. This was the unanimous opinion of the four justices of the Supreme Court who had the question under judicial consideration at Special and General Term.
The order of the General Term, affirming that of the Special Term denying the motion of the relator for a peremptory mandamus to the comptroller to issue a warrant to her for $20,000, should be affirmed, with costs.
All concur in opinion of Peokham, J., except Grover, J., dissenting.
Ordered accordingly.